AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT

**10/15/2020**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ jb _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT

**Oct 15 2020**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ib _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.    2:20-mj-04992  -Duty |
| FONTRELL ANTONIO BAINES,<br>aka "Nuke Bizzle," | |
| Defendant(s) | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of September 24, 2019, through on or about September 23, 2020, in the county of Los

Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description   - **(See Attachment A)** |
|---|---|
| 18 U.S.C. § 1029(a)(2) | Fraud And Related Activity In Connection With Access Devices |
| 18 U.S.C. § 1028A(a)(1) | Aggravated Identity Theft |
| 18 U.S.C. § 2314 | Interstate Transportation Of Stolen Property |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Marcus Valle*
*Complainant's signature*

MARCUS VALLE, Special Agent (DOL-OIG)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    10/15/2020

_____
*Judge's signature*

City and state:   Los Angeles, California

HON. ALEXANDER F. MACKINNON
U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A TO CRIMINAL COMPLAINT

### Count One

### [18 U.S.C. § 1029(a)(2)]

During the one-year period from on or about September 24, 2019, through on or about September 23, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant FONTRELL ANTONIO BAINES, in transactions affecting interstate and foreign commerce, knowingly and with intent to defraud, used unauthorized access devices as defined in Title 18, United States Code, Sections 1029(e)(1) and (3), specifically the following debit card account numbers issued to the persons identified below, which debit card account numbers were obtained with intent to defraud, and by such conduct obtained things of value, their value together totaling $1,000 or more:

| UNAUTHORIZED ACCESS DEVICE | ISSUED TO |
|---|---|
| Bank of America ("BofA") account number ending in 2423 | R.H. |
| BofA account number ending in 8906 | M.M. |
| BofA account number ending in 1779 | J.J. |

### Count Two

### [18 U.S.C. § 1028A(a)(1)]

On or about September 20, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant FONTRELL ANTONIO BAINES knowingly possessed and used, without lawful authority, a means of identification that defendant BAINES knew belonged to another person, that is, the BofA account number assigned to that person, during and in relation to a felony violation, as charged in count one of this Complaint.

### Count Three

### [18 U.S.C. § 2314]

On or about September 21, 2020, in Los Angeles, County, within the Central District of California, and elsewhere, defendant FONTRELL ANTONIO BAINES, transported, transmitted, and transferred in interstate and foreign commerce, and willfully caused to be transported, transmitted, and transferred in interstate and foreign commerce, property having a value of more than $5,000, namely the Bank of America debit cards issued in the names of R.H., M.M., and J.J., that defendant BAINES used to obtain money in Las Vegas, Nevada, knowing that said property had been unlawfully stolen, converted, and taken by fraud from Bank of America and the California Employment Development Department ("EDD"), with the intent to permanently deprive Bank of America and EDD of the property.

**AFFIDAVIT**

I, Marcus Valle, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.    I am a Special Agent with the U.S. Department of Labor-Office of Inspector General ("DOL-OIG"), and have served in this capacity for seven years.  I am presently assigned to the Los Angeles Regional Office of DOL-OIG.  My responsibilities as a DOL-OIG Special Agent include investigating unemployment insurance fraud, mail fraud, identity theft, and other related crimes.  I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia.  As part of the training provided at FLETC, I successfully completed the Basic Training course, which included, but was not limited to, courses in criminal and constitutional law.

## II. PURPOSE OF AFFIDAVIT

2.    I make this affidavit in support of a criminal complaint against, and arrest warrant for,

**Fontrell Antonio Baines ("BAINES")** (year of birth: 1989) for violations of Title 18, United States Code, Sections 1029 (a)(2)[1] (fraud and related activity in connection with access

---

[1] Among other offenses, 18 U.S.C § 1029 provides that whoever "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period; shall be guilty of an offense against the United States."  18 U.S.C. § 1029(a)(2).  The statute provides that the term "unauthorized

devices), 1028A(a)(1)[2] (aggravated identity theft), and 2314[3]
(interstate transportation of stolen property).

3.     The facts set forth in this affidavit are based upon
my personal observations, my review of the documents and records
discussed herein, my training and experience, and information
obtained from other agents and witnesses.  This affidavit is
intended to show merely that there is sufficient probable cause
for the requested warrant and does not purport to set forth all
of my knowledge of or investigation into this matter.  Unless
specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance
and in part only.

### III. <u>Summary of Probable Cause</u>

4.     The U.S. DOL-OIG, United States Postal Inspection
Service ("USPIS"), United States Internal Revenue Service,
Criminal Investigations ("IRS-CI"), and the California

---

access device" includes any access device that is "obtained with
intent to defraud."  18 U.S.C. § 1029(e)(3).

[2] Section 1028A(a)(1) of Title 18 provides that whoever,
during and in relation to any felony violation enumerated in
subsection (c), knowingly transfers, possesses, or uses, without
lawful authority, a means of identification of another person
shall, in addition to the punishment provided for such felony,
be sentenced to a term of imprisonment of 2 years.  The felonies
enumerated in subsection (c) include violations of 18 U.S.C.
§ 1029.

[3] Section 2314 of Title 18 provides that whoever transports,
transmits, or transfers in interstate or foreign commerce any
goods, wares, merchandise, securities or money, of the value of
$5,000 or more, knowing the same to have been stolen, converted
or taken by fraud, shall be guilty of an offense against the
United States.

Employment Development Department ("EDD") have developed
evidence that BAINES has engaged in a scheme to fraudulently
obtain unemployment insurance ("UI") benefits in the names of
third-party claimants, including identity theft victims, under
the Pandemic Unemployment Assistance ("PUA") provision of the
federal CARES Act, a provision that is designed to help
unemployed individuals obtain UI benefits as part of the
nation's response to the economic harms caused by COVID-19.

 5. By submitting applications for PUA benefits that
contain false information, BAINES and his co-schemers obtain
Electronic Benefit Payment ("EBP") debit cards administered by
Bank of America ("BofA") that are loaded with the fraudulently
obtained PUA benefits.  BAINES and other co-schemers do so by
listing on the applications addresses to which they have access
as the mailing addresses to which the cards should be mailed.
BAINES and other co-schemers then use the EBP debit cards to
take possession of the fraudulently obtained PUA benefits by
making cash withdrawals at Automated Teller Machines ("ATMs")
and point of sale ("POS") purchases at merchants across the
United States.

 6. On September 23, 2020, BAINES was arrested by the Las
Vegas Metropolitan Police Department ("LVMPD") and had in his
possession eight EBP debit cards, seven of which were in the
names of six other persons (one person's name appeared on two of
the cards).  Three of these other persons have confirmed that
they did not authorize BAINES or anyone else to apply for PUA
benefits in their names, let alone to withdraw and use those

benefits; the remaining three persons have not yet been
contacted but publicly available information indicates that they
do not work or reside in California and are thus ineligible for
PUA benefits administered by EDD.  BAINES used at least three of
the EBP debit cards to withdraw money at an ATM in Rancho
Cucamonga, California, and then, while each card had a value of
over $5,000, transported the cards to Las Vegas, Nevada, where
he used them at another ATM to withdraw more money.

7.    The eight EBP debit cards BAINES possessed were
obtained following the electronic filing of PUA claims with EDD
from on or about August 5, 2020, to on or about August 25 2020.
Four of the eight cards were mailed to an address on Carla Ridge
in Beverly Hills, California, and the remaining four were mailed
to an address on 2nd Street in Los Angeles, California.

8.    BofA has determined that at least 74 PUA claims have
used the Carla Ridge address as the named claimant's mailing
address, resulting in EBP debit cards loaded with the PUA
benefits being mailed to the Carla Ridge address between August
10, 2020, and August 22, 2020.

9.    The property at the Carla Ridge address is a single-
family residence that operates as a rental property offering
short and long-term leases.  BAINES rented and occupied the
property for an unknown period of time between June and August
2020, and has returned to the location, even after he was no
longer staying there, to collect mail.

10.   BofA has determined that at least 18 PUA claims have
used the 2nd Street address, resulting in EBP debit cards loaded

with the PUA benefits being mailed to the 2nd Street address
between May 25, 2020 and September 1, 2020.

11.  BAINES, using the name "Nuke Bizzle," and another
person using the name "Fat Wizza" appear in a publicly available
music video called "EDD."  The video was made on or after August
29, 2020.  In the video, BAINES and "Fat Wizza" brag about doing
"my swagger for EDD" and, holding up a stack of envelopes from
EDD, getting rich by "go[ing] to the bank with a stack of
these."  YouTube reports that, as of the date of this affidavit,
this video has been viewed over 400,000 times.

12.  To date, BAINES and other co-schemers have obtained
approximately $704,760 of the PUA benefits loaded onto the EBP
debit cards mailed to the Carla Ridge and 2nd Street addresses
as part of this fraudulent scheme.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

13.  Based on witness interviews I have conducted, my
review of documents obtained from third parties, reports of
interviews conducted by other law enforcement officers,
conversations with other law enforcement officers, publicly
filed documents, and other publicly available materials, I know
the following:

### A.    Unemployment Insurance Benefits

14.  Since 1935, The U.S. Department of Labor's
Unemployment Insurance (UI) program has provided unemployment
benefits to eligible workers who become unemployed through no

fault of their own.  This program ensures that at least a
significant portion of the necessities of life -- most notably
food, shelter, and clothing -- are met on a weekly basis while
the worker seeks employment.  UI beneficiaries who meet the
requirements of the applicable state law are eligible for this
temporary financial assistance.  Each state administers a
separate UI program within the guidelines established by Federal
law.  In the State of California, EDD administers the UI program
for residents and others physically performing work activities
in California.

    15.  Generally speaking, regular UI claimants must be:
1) unemployed through no fault of their own; 2) able and
available for work; 3) willing to accept suitable work; and
4) actively seeking work.

### B.  Pandemic Unemployment Assistance Under the CARES Act

    16.  On March 13, 2020, the President of the United States
declared COVID-19 an emergency under the Robert T. Stafford
Disaster Relief and Emergency Assistance Act.  As a result,
Congress passed the Coronavirus Aid, Relief, and Economic
Security Act ("CARES Act"), which the President signed into law
on March 27, 2020.  The CARES Act provides over $2 trillion in
economic relief protections to the American people from the
public health and economic impacts of COVID-19.

    17.  Prior to the enactment of the CARES Act, to be
eligible for UI administered by EDD, a person must have been
employed and worked in California and received at least a

certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

18.  The CARES Act established a new program -- Pandemic Unemployment Assistance (PUA) -- to provide unemployment benefits during the COVID-19 pandemic to people who do not qualify for regular unemployment insurance benefits including business owners, self-employed workers, independent contractors, and those with a limited work history who are out of business or have significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

19.  Under the PUA provisions of the CARES Act, a person who is a business owner, self-employed worker, independent contractor, or gig worker can qualify for PUA benefits administered by EDD if he/she previously performed such work in California and is unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.[4]

---

[4] COVID-19-related reasons for being out of work include: being diagnosed with COVID-19 or experiencing symptoms of COVID-19 and seeking a medical diagnosis; being unable to work because a health care provider advised self-quarantining due to concerns related to COVID-19; having a household member who has been diagnosed with COVID-19; providing care for a family or household member who has been diagnosed with COVID-19; having primary caregiving responsibility for a child or other household member who is unable to attend school or another facility that is closed as a direct result of the COVID-19 and the school or facility care is required for the claimant to work; becoming the breadwinner or major support for a household because the head of

Examples of non-business-owner occupations that may qualify a person for PUA benefits include realtor, barber, hairstylist, freelance photographer, construction handyman/woman, gardener, and ride-share driver.[5]

20. EDD began accepting applications for PUA benefits on April 28, 2020. To make benefits available as quickly as possible, payments are issued in phases. If a claimant qualifies for PUA benefits, the minimum payments are as follows based on the claim's start date:

> Phase 1: For claims with start dates from February 2 to March 28, 2020, $167 per week for each week the claimant is unemployed due to COVID-19.
>
> Phase 2: For claims with start dates from March 29 to July 25, 2020, $167 plus $600 per week for each week the claimant is unemployed due to COVID-19.
>
> Phase 3: For claims with start dates from July 26 to December 26, 2020, $167 per week for each week the claimant is unemployed due to COVID-19.

---

household died due to COVID-19; the claimant has quit his/her job due to COVID-19; the place of employment has closed due to COVID-19; a job that the claimant was scheduled to start is no longer available due to the COVID-19 public health emergency; or the place of employment is inaccessible due to the COVID-19 public health emergency.

[5] To be eligible, such person must also not be participating in the UI Elective Coverage program. Under the provisions of the California Unemployment Insurance Code (CUIC), employers may elect Unemployment Insurance (UI) and State Disability Insurance (SDI) or only Disability Insurance (DI) coverage for themselves. Self-employed individuals, who are not employers, may only elect SDI coverage for themselves.

21.   PUA applicants may be eligible for more than the minimum weekly benefit amount of $167 if their annual income for 2019 reported on the PUA application meets a minimum threshold.

22.   A UI claimant can usually collect 26 weeks of regular state UI benefits.  The CARES Act provides for additional Pandemic Emergency Unemployment Compensation ("PEUC"), which provides up to 13 weeks of additional payments, for a total of 39 weeks of benefits.  PEUC is available to persons who were or are fully or partially unemployed at any time between from March 29 and December 26, 2020.  Persons with a regular UI claim, a PUA claim or a PEUC extension filed between March 29 and July 25, 2020, also receive Federal Pandemic Unemployment Compensation ("FPUC"), which is the extra $600 per week.

23.   Persons applying for PUA benefits do not need to submit any supporting documents to the EDD with their applications.  Claimants enter their total income for the 2019 calendar year on the application.  The stated income will be used to pay the minimum benefits of $167 per week.  EDD may request documentation to provide proof of the stated income.[6]  If the income information provided by the PUA claimant meets an annual earnings threshold of $17,368 or more, the EDD will work as quickly as possible to verify the claimant's income using other resources available to EDD in order to increase the PUA weekly benefit amount.

---

[6] In general, EDD accepts items such as an annual tax return, 1099 forms, W-2s, and pay stubs as proof of income.

24.  Like regular UI claims, PUA claims can be filed online.  When an individual files a PUA claim online, EDD automatically maintains certain information regarding the filing of the claim.  This information includes the date and time the claim was submitted, the name of the person for whom the claim was filed, and the IP address of the computer, or ISP account, that was used to file the claim.

25.  A PUA claimant must answer various questions to establish his/her eligibility for PUA benefits.  The claimant must provide his/her name, Social Security Number, and mailing address.  The claimant must also identify a qualifying occupational status and COVID-19-related reason for being out of work.

26.  After it accepts a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposits UI funds every two weeks to an EBP debit card administered by BofA, which the claimant can use to pay for his/her expenses.  The EBP card is sent via the U.S. Postal Service to the claimant at the address the claimant provides in their UI claim.  Claimants can activate their debit card over the phone or online.

27.  When receiving UI benefits, including PUA benefits, a claimant must complete a Continued Claim Form (DE 4581) and certify every two weeks, under penalty of perjury, that he/she remains unemployed and eligible to receive UI benefits.  EDD authorizes and deposits payment to the EBP debit card after it receives the Continued Claim Form.  At present, weekly PUA benefits typically range from $40 to $450.  In order to receive

the maximum weekly benefit of $450, a claimant must have earned $11,674.01 or more in the highest quarter of the claimant's base employment period.

### C.   Schemes to Fraudulently Obtain UI Benefits

28.   Based on my training and experience, I know that individuals scheming to fraudulently obtain UI benefits generally follow recognizable patterns, including, among other indicia:

a.   Buying or outright stealing the identities of other people to file for fraudulent UI benefits in the identity-theft victims' names and then collecting the UI funds.  Co-schemers commonly withdraw UI benefits via ATMs or make POS purchases at merchants for goods and services.

b.   Using addresses the schemers control as the addresses submitted to EDD for the claims so that EBP debit cards and other EDD correspondence will be mailed to these addresses and thus be accessible to the schemers.

c.   Submitting multiple UI claims from the same IP address for multiple claimants.  These claims are sometimes submitted on the same day close in time.

### D.   BAINES Possessed Fraudulently Obtained EBP Debit Cards

29.   On or about September 23, 2020, BAINES was arrested by the LVMPD.[7]  I have reviewed reports of that arrest and spoken

---

[7] BAINES was previously convicted of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Felon in Possession of a Firearm) in United States v. Fontrell Baines, Case No. 2:14-cr-36-APG-VCF (D. Nev.), and sentenced on October 30, 2014, to 30 months in

with LVMPD Sergeant Erik Perkett regarding it, and have learned the following:

    a.    At approximately 1:06 a.m., LVMPD officers stopped a Cadillac Escalade for speeding.  BAINES was a passenger in the car, but was not wearing a seat belt.  BAINES stepped out of the car at the officers' request, and consented to a search of his person.  Eight EBP debit cards were found on BAINES's person, seven of which were in the names of others and only one of which was in the name of BAINES.

    b.    The seven EBP debit cards in names other than BAINES's own name were as follows:

            i.   Card ending in 2423 in the name of R.H.

            ii.  Card ending in 5236 in the name of M.M.

            iii. Card ending in 8906 in the name of M.M.

            iv.  Card ending in 1779 in the name of J.J.

            v.   Card ending in 1326 in the name of R.P.

            vi.  Card ending in 7062 in the name of P.J.

            vii. Card ending in 2696 in the name of A.L.

    c.    The driver of the car consented to a search of the car.  Under the third row of seats, which was the row in which BAINES had been sitting, officers found cash.  It was later determined that this cash amounted to $49,734.

    d.    Officers informed BAINES of his Miranda rights and BAINES said he understood his rights.  BAINES stated that he

---

prison.  In the plea agreement in that case, BAINES admitted that he had a "prior felony conviction for possession with intent to deliver Dihydrocodeinone."

had the debit cards in his possession because people owed him money.

     e.   BAINES was arrested on charges of violating various Nevada statutes including NRS: 205.690 (Possess Credit or Debit Card without Owners Consent).[8]

    30.  On or about September 28, 2020, I discussed the eight debit cards in BAINES's possession with Ivant Romo, an investigator with EDD, who provided relevant EDD documents to me for my review and told me the following based on his review of information in EDD's database:

     a.   Each of the eight EBP debits cards had been authorized by EDD based on an application for PUA benefits that had been electronically filed with EDD between on or about August 5, 2020, and on or about August 25, 2020.

     b.   On each of the applications, the named PUA claimant stated that he/she was a self-employed resident of California.

     c.   Each of the applications, with the exception of the application for BAINES, stated that the PUA claimant was a self-employed barber whose place of employment had been closed as a result of the COVID-19 pandemic, triggering eligibility for UI benefits under the PUA provision of the CARES Act.

    31.  As described below, I have interviewed two of the people in whose names were issued three of the EBP debit cards

---

[8] Other charges were based on other items possessed by BAINES.  BAINES has pleaded not guilty to the charges and been released on bond.  The case remains pending.

that BAINES possessed, as well as the mother of a third person
in whose name a fourth EBP debit card was issued, and have
learned the following:

### Identity Theft Victim R.H. (Card ending in 2423)

32.   EDD records show that, on August 15, 2020, an
application for PUA benefits was filed for R.H.  The application
stated that R.H. was unemployed as a result of the COVID-19
pandemic.  The application included an attestation that stated,
"Your place of employment is closed as a direct result of the
COVID-19 public health emergency."  The application contained
R.H.'s name, Date of Birth ("DOB"), and Social Security Number
("SSN"), and identified his occupation as being a self-employed
barber.  The PUA application identified 1705 Carla Ridge,
Beverly Hills, CA (the "Carla Ridge address") as R.H.'s mailing
address.

33.   On or about October 1, 2020, I interviewed R.H. by
telephone regarding the PUA claim filed in his name.  R.H.
provided the following information:

        a.   R.H. lives in Missouri.

        b.   R.H. was currently receiving UI benefits from the
State of Missouri.

        c.   R.H. was never employed as a barber.

        d.   R.H. has never worked in California.  The only
time he lived in California was when he briefly attended Santa
Monica City College, ending in 2017, on a basketball
scholarship.

      e.   R.H. has never applied for UI benefits in California.

      f.   R.H. does not know BAINES.

      g.   R.H. has never authorized anyone to use his identity or file a PUA claim in his name.

<u>Identity Theft Victim M.M. (Cards ending in 5236 and 8906)</u>

34.   EDD records show that, on August 25, 2020, an application for PUA benefits was filed for M.M.[9]  The application stated that M.M. was unemployed as a result of the COVID-19 pandemic.  The application included an attestation that stated, "Your place of employment is closed as a direct result of the COVID-19 public health emergency."  The application contained M.M.'s name, DOB and SSN, and stated that he was a self-employed barber.  The application identified 3750 W 2nd St. Apt. 6, Los Angeles, CA (the "2nd St. address") as M.M.'s mailing address.

35.   On October 1, 2020, I interviewed M.M. by telephone regarding the PUA claim filed in his name.  M.M. provided the following information:

      a.   M.M. has never lived or worked in California and has only visited California for pleasure.

      b.   M.M. did not file a PUA claim in California.

---

[9] Only one application was submitted for M.M.  Benefits were only provided under the 8906 account.  It appears that the 5236 account was closed, possibly in response to notification that the card had not been received.  No benefits were provided under the 5236 account.  I am continuing to investigate events connected to the 5236 account.

<u>Identity Theft Victim J.J. (Card ending in 1779)</u>

36.   EDD records show that, on August 25, 2020, an
application for PUA benefits was filed on behalf of J.J. stating
that J.J. was unemployed as a result of the COVID-19 pandemic.
The application included an attestation that stated, "Your place
of employment is closed as a direct result of the COVID-19
public health emergency."  The PUA application contained J.J.'s
name, DOB and SSN, and alleged that he was a self-employed
barber.  The PUA application identified the 2nd Street address
as J.J.'s mailing address.

37.   On October 1, 2020, I interviewed J.J.'s mother R.J.
by telephone regarding the PUA claim filed in J.J.'s name.  R.J.
provided the following information about J.J.[10]:

        a.   J.J. is her son.  J.J. is currently living in
Mississippi where he attends college at the University of
Southern Mississippi.

        b.   R.J. confirmed that the SSN and DOB used on the
PUA application filed in J.J.'s name belonged to her son J.J.

        c.   R.J. confirmed that her son has never lived or
worked in California.  Prior to going to college, J.J. lived in
Fort Lauderdale, Florida.

        d.   R.J. confirmed that her son has never had a job
and has never been employed as a barber.

---

    [10] R.J. provided a telephone number for J.J., but, as of the
date of this affidavit, I have not yet been able to make contact
with J.J.

The Remaining Named Claimants

38.   Between on or about September 30, 2020 and on or about October 6, 2020, I reviewed queries from a law enforcement database[11] relating to possible identity theft victims R.P. (card ending in 1326), P.J. (card ending in 7062), and A.L. (card ending in 2696).  None of these three named claimants appears to reside or work in California, making them ineligible for UI benefits in California.  On the contrary, the named claimants appear to reside in the following locations in the following states:

    a.   R.P. appears to reside in Florissant, Missouri.

    b.   P.J. appears to reside in St. Louis, Missouri.

    c.   A.L. appears to reside in Pompano Beach, Florida.

**E.   BAINES's Use of the fraudulent EBP debit cards**

39.   My investigation has shown that BAINES used the fraudulently obtained EBP debit cards that were in his possession on September 23, 2020, to obtain money.

40.   ATM surveillance footage provided by BofA depicts a person fitting the physical description of BAINES[12] using six of the eight EBP debit cards to withdraw the fraudulently obtained PUA benefits at ATMs in 31 separate transactions between

---

[11] The database is TLOxp, which is managed by TransUnion.

[12] My knowledge of BAINES's physical appearance is based on my review of his Tennessee driver's license photograph, the booking photograph from his September 23, 2020 arrest by LVMPD, and the photos appearing on his Facebook page.

September 20, 2020 and September 21, 2020 in Rancho Cucamonga,
California and Las Vegas, Nevada.  In particular:

41.  On or about October 5, 2020, I reviewed BofA
surveillance photos related to the EBP card ending in 2423 in
R.H.'s name that BAINES possessed on September 23, 2020, as
discussed in paragraphs 32-33, above.

a.  BofA ATM surveillance photos from between
September 20, 2020 and September 21, 2020, show a person fitting
the physical description of BAINES accessing the EBP debit card
ending in 2423 in the name of R.H. to conduct three cash
withdrawals.  BofA records for this account show that the
balance on this card (i.e., the amount of money available)
before these withdrawals was approximately $16,007.87.  The
three withdrawals totaled $2,500 and were made in Rancho
Cucamonga, California, and Las Vegas, Nevada.

b.  The transaction details are as follows:

i.  On September 20, 2020, a person fitting the
physical description of BAINES used the EBP debit card ending in
2423 to withdraw $1,000 from a BofA ATM in Rancho Cucamonga,
California, within the Central District of California.

ii.  On September 21, 2020, a person fitting the
physical description of BAINES used the EBP debit card ending in
2423 to withdraw $500 from a BofA ATM located at 4795 S.
Maryland Parkway in Las Vegas, Nevada.

iii. On September 21, 2020, a person fitting the
physical description of BAINES used the EBP debit card ending in

2423 to withdraw $1,000 from a BofA ATM located at 4080 Spring
Mountain Rd. in Las Vegas, Nevada.

42.  On or about October 5, 2020, I reviewed BofA
surveillance photos related to the EBP card ending in 8906 in
M.M.'s name that BAINES possessed on September 23, 2020, as
discussed in paragraphs 34-35, above.

a.  BofA ATM surveillance photos from between
September 20, 2020, and September 21, 2020, show a person
fitting the physical description of BAINES accessing the EBP
debit card ending in 8906 in the name of M.M. to conduct three
cash withdrawals totaling $2,500 in Rancho Cucamonga,
California, and Las Vegas, Nevada. BofA records for this account
show that the balance on this card (i.e., the amount of money
available) before these withdrawals was approximately $6,793.33.

b.  The transaction details are as follows:

i.  On September 20, 2020, a person fitting the
physical description of BAINES used the EBP debit card ending in
8906 to withdraw $1,000 from a BofA ATM in Rancho Cucamonga,
California, within the Central District of California.

ii.  On September 21, 2020, a person fitting the
physical description of BAINES used the EBP debit card ending in
8906 to withdraw $500 from a BofA ATM located at 4795 S.
Maryland Parkway in Las Vegas, Nevada.

iii. On September 21, 2020, a person fitting the
physical description of BAINES used the EBP debit card ending in
8906 to withdraw $1,000 from a BofA ATM located at 4080 Spring
Mountain Rd. in Las Vegas, Nevada.

43.   On or about October 5, 2020, I reviewed BofA surveillance photos related to the EBP card ending in 1779 in J.J.'s name that BAINES possessed on September 23, 2020, as discussed in paragraphs 36-37, above.

a.   BofA ATM surveillance photos from between September 20, 2020, and September 21, 2020, show a person fitting the physical description of BAINES accessing the EBP debit card ending in 1779 in the name of J.J. to conduct three cash withdrawals totaling $2,500 in Rancho Cucamonga, California, and Las Vegas, Nevada.  BofA records for this account show that the balance on this card (i.e., the amount of money available) before these withdrawals was approximately $6,798.94.

b.   The transaction details are as follows:

i.   On September 20, 2020, a person fitting the physical description of BAINES used the EBP debit card ending in 1779 to withdraw $1,000 from a BofA ATM in Rancho Cucamonga, California, within the Central District of California.

ii.   On September 21, 2020, a person fitting the physical description of BAINES used the EBP debit card ending in 1779 to withdraw $500 from a BofA ATM located at 4795 S. Maryland Parkway in Las Vegas, Nevada.

iii. On September 21, 2020, a person fitting the physical description of BAINES used the EBP debit card ending in 1779 to withdraw $1,000 from a BofA ATM located at 4080 Spring Mountain Rd. in Las Vegas, Nevada.

**F.    The Value of the EBP Debit Cards Exceeded $5,000 When BAINES Transported Them from California to Nevada**

44.    As set forth in paragraph 41(a), above, on September 20, 2020, the balance on the EBP debit card ending 2423 was approximately $16,007.87 when it was used to withdraw $1,000 in California.  BofA records show that no further transactions were made on the card until it was used in Las Vegas on September 21, 2020.  Accordingly, at the time the EBP debit card ending 2423 was transported from California to Nevada, it had a value of approximately $15,007.87.

45.    As set forth in paragraph 42(a), above, on September 20, 2020, the balance on the EBP debit card ending 8906 was approximately $6,793.33 when it was used to withdraw $1,000 in California.  BofA records show that no further transactions were made on the card until it was used in Las Vegas on September 21, 2020.  Accordingly, at the time the EBP debit card ending in 8906 was transported from California to Nevada, it had a value of approximately $5,793.33.

46.    As set forth in paragraph 43(a), above, on September 20, 2020, the balance on EBP debit card ending in 1779 was approximately $6,798.94 when it was used to withdraw $1,000 in California.  BofA records show that no further transactions were made on the card until it was used in Las Vegas on September 21, 2020.  Accordingly, at the time the EBP debit card ending 1779 was transported from California to Nevada, it had a value of approximately $5,798.94.

### G. The Eight Fraudulent EBP Debit Cards Appear to Be Connected to a Larger Scheme to Defraud EDD

    1. <u>The Carla Ridge and 2nd Street Addresses Were Used as Mailing Addresses to Receive Fraudulently Obtained EBP Cards</u>

47. From EDD records I have reviewed for the PUA benefits loaded onto the eight EBP cards that BAINES possessed on September 23, 2020, I know that the applications for four of the PUA claims listed the Carla Ridge address as the claimant's mailing address and the applications for the other four listed the 2nd Street address.

48. On or about October 1, 2020, BofA Vice President/Financial Crimes Investigator James Wilkinson ("FCI Wilkinson") provided me with the following information relating to the eight EBP debit cards possessed by BAINES on September 23, 2020, as well as to other EBP debit cards that BofA has issued on behalf of EDD:

    a. Four of the eight EBP debit cards in BAINES's possession on September 23, 2020, were mailed by BofA on behalf of EDD to the Carla Ridge address.

    b. A total of 74 EBP debit cards have been mailed by BofA on behalf of EDD to the Carla Ridge address.

    c. Four of the eight EBP debit cards in BAINES's possession on September 23, 2020, were mailed by BofA on behalf of EDD to the 2nd Street address.

    d. A total of 18 EBP debit cards have been mailed by BofA on behalf of EDD to the 2nd Street address.

e.    The 92 EBP debit cards mailed to the Carla Ridge and 2nd Street addresses were preloaded with approximately $1,256,108 in PUA benefits.

f.    Between June 2, 2020 and September 27, 2020, the UI benefits loaded onto these 92 EBP debit cards were accessed in the following manner:

i.    Approximately $375,177 was accessed through ATM cash withdrawals.[13]

ii.   Approximately $205,273.28 was used to pay for purchases of goods and services.[14]

iii.  Approximately $39,180 was accessed through banking center teller cash withdrawals in Los Angeles, California.

iv.   Approximately $85,130 was accessed through Money Transfers/Funds Transfer including Cash App[15] transactions.

///

///

---

[13] Between June 2, 2020 and September 27, 2020, the ATM cash withdrawals occurred in California, Arkansas, Georgia, Illinois, Missouri, Nevada, and Tennessee.

[14] These POS purchases were made in California, Arkansas, Connecticut, Florida, Georgia, Illinois, Missouri, Nevada, Pennsylvania, Tennessee, Texas, Utah, Virginia, and Wisconsin.

[15] Cash App is a mobile payment service developed by Square, Inc., allowing users to transfer money to one another using a mobile phone app.  As of February 18, 2018, the service recorded 7 million active users.

    2.    <u>BAINES Is Associated with the Carla Ridge</u>
         <u>Address</u>[16]

49.  On or about September 17, 2020, EDD Criminal Intelligence Unit ("CIU") ran BAINES' SSN and discovered a PUA claim in the name of BAINES filed on August 5, 2020.  The mailing address provided on the application for this claim, and thus the address to which BAINES's EBP debit was mailed, was the Carla Ridge address.

50.  Between on or about September 30, 2020, and on or about October 1, 2020, I participated in an interview of Cooperating Witness 1 ("CW-1"), who stated the following:

    a.  CW-1 positively identified a photograph of BAINES as a rap music artist who went by the name "Bazzle" or "Bizzle" who had rented the Carla Ridge address property sometime between June and August 2020.

    b.  CW-1 did not have a written rental agreement/contract with BAINES and was unsure of exactly when BAINES had left the Carla Ridge property.

    c.  CW-1 verbally agreed to rent the Carla Ridge address property to BAINES for $1,500 per night.  BAINES stayed in the master bedroom at the Carla Ridge address property and paid CW-1 the rent in cash.

---

[16] BAINES's connection to the 2nd Street address is still being investigated.  I have determined that PUA claims have been submitted for two of the listed residents of the 2nd Street property.

d.   CW-1 recalled seeing a man known to CW-1 as "Fat something" on at least one occasion while BAINES was staying at the Carla Ridge address.

e.   CW-1 was shown a photo of Marcus Antonio Jones[17] but was not told the identity of the person in the photo.  CW-1 identified the person in a photo as the person CW-1 knew as "Fat something."

f.   CW-1 recalled that, after BAINES stopped renting the Carla Ridge address property, he would return to the property and wait for the mail to be delivered.  BAINES appeared with approximately seven cars that were parked outside of the house at the Carla Ridge address.  The occupants of the vehicles told CW-1 they were waiting for their "checks."

g.   Because people were "attacking the mail" at the Carla Ridge address, CW-1 told the local postman not to deliver any mail to the location that was not addressed to CW-1.

h.   CW-1 recalled BAINES making videos while staying at the Carla Ridge address, which BAINES uploaded to various social media platforms.

51.   On or about October 1, 2020, I participated in an interview of Cooperating Witness 2 ("CW-2"), who stated the following:

a.   CW-2 is employed by CW-1.

b.   CW-2 was shown a photograph of BAINES but was not told the identity of the person in the photo.  CW-2 identified

_____

[17] Law enforcement had identified "Fat Wizza" as Marcus Antonio Jones (DOB 11/26/1993).

the person in the photo as the occupant of the Carla Ridge address during the summer of 2020.

       c.   CW-2 recalled BAINES staying in the master bedroom at the Carla Ridge address.

       d.   CW-2 was shown a photo of Marcus Antonio Jones but was not told the identity of the person in the photo. CW-2 recognized the person depicted in the photo as "Fat Wizza" and recalled seeing him on music videos playing at the Carla Ridge address.

       e.   CW-2 recalled seeing BAINES show up at the Carla Ridge address after he was no longer renting the property to retrieve mail from the mailbox.

### 3.   BAINES Boasted about his Ability to Defraud EDD on Publicly Available Videos

52.  I have reviewed a YouTube music video titled "EDD" by music artist "Nukebizzle" featuring "Fat Wizza."[18] The video is available at https://www.youtube.com/watch?v=QZKnNhCTmeA. In the video, two men rap about "getting rich off EDD" and appear to be bragging about their ability to defraud EDD.

53.  The video begins with a recording that states, "Your card has now been activated and is ready for use. As of August

---

   [18] As discussed above in paragraphs 50(e) and 51(d) and footnote 17, "Fat Wizza" is Marcus Antonio Jones ("Jones"). A PUA claim in the name of Jones was submitted on August 25, 2020. Jones' last employer is identified as Flyway Extensions in Memphis, Tennessee. Jones's usual occupation is "salesperson," but "Barber" is listed under "other skills."

29, 2020, the available balance on this account is twenty-one thousand . . ."[19]

54.  The music video shows the two rappers using a laptop computer, which appears to show EDD's homepage.  Throughout the video, the rappers appear with large amounts of cash and mail bearing the EDD insignia as part of the return address.

55.  One of the envelopes with an EDD return address shown in the video is addressed to Z.N.  EDD investigators determined that a PUA claim had been submitted in Z.N.'s name on or about August 28, 2020, using the address 5057 Lemon Grove, No. 3, Los Angeles, California.  The PUA claim states that Z.N. was self-employed as a barber, and attests that a member of Z.N.'s household has COVID-19.  Two other PUA claims have been submitted that also use the Lemon Grove address, although publicly available information, as assembled in the TLOxp database, does not show any connection of Z.N. or the other named claimants to this address.  After Z.N.'s application for PUA benefits was accepted, an address change for Z.N. was submitted to EDD, listing a new address -- an apartment on EH Crump Blvd, in Memphis, Tennessee.  PUA claims for five additional claimants have been submitted to EDD using this same Memphis apartment as the mailing address.

---

[19] It is hard to hear the end of the stated amount because the rap begins and obscures the recording; the full amount may be $21,652.

56.   During the video, the two rappers make the following statements[20] regarding defrauding EDD:

    a.   "I did my swagger with EDD, go to the bank with a stack of these."

    b.   "10 cards swiping 10k a day."

    c.   "You got to sell cocaine, I can just file a claim . . . so happy to certify."

    d.   "Unemployment so sweet, we had 1.5 land this week."

57.   The YouTube page displaying this "EDD" video states that it "premiered" on September 11, 2020, and had 404,963 views as of October 14, 2020.  The following statement also appears, which, based on my review of this YouTube page, I believe was added on or about October 13 or 14, 2020:  "***THIS VIDEO WAS CREATED WITH PROPS AND WAS MADE FOR ENTERTAINMENT PURPOSES***

58.   On or about September 15, 2020, DOL-OIG Assistant Special Agent in Charge Michael Blas sent the "EDD" video to DOL-OIG Data Science Branch Chief Tim Eagle ("BC Eagle") and asked BC Eagle to review it and attempt to identify the rappers performing in it.

59.   On September 16, 2020, BC Eagle used the Facebook page connected with "Nuke Bizzle" and other publicly available information to identify the person called "Nuke Bizzle" as BAINES.

---

[20] The statements set forth below reflect my best understanding of what the rappers are saying on the video, which can be difficult to follow because the speakers are rapping and their words are not clearly enunciated.

60.   I have reviewed BAINES's publicly available Facebook account.  The name on the profile for the account is "Fontrell Nuke Bizzle Baines."  In his profile, BAINES states that he is from Memphis, Tennessee.

61.   I have compared the photograph of BAINES that was taken when he was arrested by LVMPD with the "Nuke Bizzle" who appears in the "EDD" video.  Both BAINES and "Nuke Bizzle" display similar tattoos between their eyebrows and on their necks.

62.   Between on or about October 1, 2020, and on or about October 6, 2020, I reviewed postings on the Instagram[21] account in the name of "nukbizzle23" and "nukebizzle1."  The postings include a portion of the "EDD" music video and information indicating it was uploaded on September 11, 2020.

63.   On or about September 23, 2020, LVMPD detectives located what appears to be a live stream[22] video on BAINES's Instagram account "nukebizzle1" showing someone video-recording individuals withdrawing cash from several ATMs while playing BAINES's "EDD" song in the background.

---

[21] Instagram is an American photo and video sharing social networking service owned by Facebook.  Instagram allows users to upload pictures and videos to the social media site from computers and mobile devices.

[22] Instagram Live lets users broadcast video to followers in real-time as part of Instagram Stories.  As soon as the broadcast ends, the video disappears; there are no replays.

## V.  <u>CONCLUSION</u>

64.   Based on the information set forth above, there is
probable cause to believe that FONTRELL ANTONIO BAINES has
committed violations of Title 18, United States Code, Sections
1029(a)(2), 1028A(a)(1), and 2314.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _15th_ day of
October, 2020.


_____
HONORABLE ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE